# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| DEAN CHRISTIANSEN, Plaintiff, vs. CHRISTOPHER ERAL and REX MUELLER, in their individual and official capacities, and the CITY OF SIOUX CITY, Defendants. | Case No. 21-CV-4017-KEM  **MEMORANDUM OPINION AND ORDER** |

At issue is the reasonableness of the pursuit intervention technique (PIT) maneuver to end a high-speed chase. Because I agree that Plaintiff Dean Christiansen's complaint fails to state a claim for excessive force or substantive due process under 42 U.S.C. § 1983, I **grant** Defendants' motions to dismiss (Docs. 7, 15).

## I. BACKGROUND

Plaintiff initiated this action on April 7, 2021. Doc. 1. Defendants moved to dismiss (Doc. 7), and in response, Plaintiff filed an amended complaint (Doc. 12). Defendants filed a renewed motion to dismiss, incorporating the arguments in their prior motion. Doc. 15. Plaintiff filed a resistance (Doc. 23), and Defendants filed a reply (Doc. 26). The parties consented to the exercise of jurisdiction by a United States magistrate judge, and the case was assigned to me for final disposition. Doc. 18.

The following facts are taken from Plaintiff's amended complaint. Doc. 12. In the early morning hours, a North Sioux City, South Dakota, police officer observed Christiansen leave a casino in North Sioux City. The officer attempted to initiate a traffic

stop of Christiansen because he had come from the casino, giving the pretextual reason of mechanical issues with Christiansen's truck as the basis for the stop. Despite the officer's use of his police lights and siren, Christiansen did not stop. The officer gave chase. The pursuit reached speeds of 80 miles per hour, and the officer observed Christiansen failing to stop at stop signs and driving on the wrong side of the road.

The high-speed chase continued into Iowa, and the South Dakota officer radioed the Sioux City, Iowa, police department that he was in pursuit of a vehicle under suspicion of operating while intoxicated (OWI). Sioux City police officers attempted to stop Christiansen's truck using "stop sticks." Another vehicle (not involved in the chase) hit the stop sticks first. Christiansen swerved to avoid the disabled vehicle and avoided the stop sticks. Then the South Dakota police officer pursuing Christiansen hit the stop sticks.

Defendant Christopher Eral, an officer with the Sioux City Police Department, began chasing Christiansen. Like the South Dakota police officer, he observed Christiansen driving through stop signs and in the opposite lane of traffic. Officer Eral estimated that Christiansen was initially driving between 50 and 60 miles per hour, but during the final part of the pursuit, he reached speeds of 80 to 90 miles per hour. While Christiansen was driving more than 80 miles per hour, Officer Eral announced his intention to use the PIT maneuver to end the chase. Moments later, while driving more than 40 miles per hour, Officer Eral employed the PIT maneuver, using his vehicle to strike Christiansen's truck. As a result, Christiansen's truck spun off the road and into a ditch and light pole. At the time of the PIT maneuver, there were no pedestrians or vehicles nearby other than police vehicles.

Plaintiff claims that the pursuit, stop sticks, and PIT maneuver violated Sioux City Police Department policy. Sioux City Police Department policy authorizes pursuits from an outside agency only when that agency's pursuit complies with Sioux City policy, and Sioux City policy does not allow an officer to give chase based on traffic offenses (including OWIs) or mechanical issues. When an outside-agency pursuit is unauthorized,

2

Case 5:21-cv-04017-KEM   Document 27   Filed 11/19/21   Page 2 of 12

Sioux City police officers cannot become directly involved in the pursuit unless the driver commits an offense in Sioux City that allows pursuit. In addition, to employ stop sticks, Sioux City departmental policy requires supervisory approval (which was not obtained here) and to use reasonable efforts to avoid using the stop sticks when non-involved traffic could inhibit successful deployment. Finally, Sioux City departmental policy prohibits the use of the PIT maneuver on vehicles driving more than 40 miles per hour.

Christiansen brings claims under 42 U.S.C. § 1983, alleging Officer Eral's use of the PIT maneuver violated his right to be free from excessive force under the Fourth and Fourteenth Amendments and his substantive due process rights. Doc. 12. Christiansen also alleges *Monell*[1] liability against the City of Sioux City and Defendant Rex Mueller in his official capacity as the Chief of the Sioux City Police Department. *Id.* Christiansen also brings state-law claims for excessive force and violation of substantive due process under the Iowa Constitution (against Officer Eral), negligence (against Officer Eral), and negligent training and supervision and respondeat superior (against Chief Mueller and the City).

## II. DISCUSSION

### A. Section 1983 Excessive Force Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Because "[q]ualified immunity is an immunity from suit, not a mere defense to liability," defendants are entitled to dismissal under Rule 12(b)(6) if they show "they are entitled to qualified immunity on the face of the complaint." *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). At this stage, the court "accept[s] the factual allegations in the complaint as true and construe[s] them in favor of the plaintiff." *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017). But the court need "not presume the truth of legal

---

[1] *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

conclusions couched as factual allegations." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). Defendants are not entitled to dismissal "unless the plaintiff can prove no set of facts that would demonstrate an entitlement to relief." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (quoting *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999)). To state a plausible claim, the plaintiff must allege more than "labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Hager*, 735 F.3d at 1013 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Qualified immunity protects public officials from § 1983 damage actions if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanley v. Finnegan*, 899 F.3d 623, 626-27 (8th Cir. 2018) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). Thus, *"*[t]o determine whether a defendant is entitled to dismissal on the basis of qualified immunity, [the court] consider[s] '(1) whether the official's conduct violated a constitutional right; and (2) whether the violated right was clearly established.'" *Id.* at 627 (quoting *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017)).

"To state an excessive force claim under the Fourth Amendment, a plaintiff must show that an officer's use of force was 'objectively unreasonable, given the facts and circumstances of the particular case, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."'" *Waters*, 921 F.3d at 739 (quoting *Chambers v. Pennycook*, 641 F.3d 898, 905-06 (8th Cir. 2011)). As Defendants note, "police department guidelines do not create a constitutional right." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). "State legislatures and government agencies are free to hold government officials to higher standards than the Constitution requires." *Id.* Thus, the issue is whether Officer Eral's use of force violated federal constitutional standards, not whether it violated departmental policy. *Id.*; *see also Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 628-29 (8th Cir. 2021); *Ebmeier v. Stump*, 70 F.3d 1012, 1013 n.6 (8th Cir. 1995); *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir.

4

1988). That Officer Eral's use of force violated departmental policy does not bear on whether it was objectively reasonable, as Plaintiff argues. *See Cole*, 993 F.2d at 1334 (analyzing the reasonableness of defendant officer's use of deadly force to stop a vehicle engaged in a high-speed chase without consideration of whether defendant's conduct violated departmental policy; the court reversed the district court's determination that defendant's conduct "was legally unreasonable because it was not authorized under the policies of the Missouri Highway Patrol," noting the issue was whether "the government official violated the Constitution or federal law, not whether he violated the policies of a state agency").

"The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Wenzel v. City of Bourbon*, 899 F.3d 598, 602 (8th Cir. 2018). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Cole*, 993 F.2d at 1333 (cleaned up) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). Courts "must balance the nature and quality of the [use of force] on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the [use of force]." *Scott v. Harris*, 550 U.S. 372, 383 (2007) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). In the context of a high-speed chase, the court "consider[s] the risk of bodily harm that [the defendant officer's] actions posed to [the plaintiff] in light of the threat to the public that [the officer] was trying to eliminate." *Id.*

In *Scott v. Harris*, the Supreme Court addressed the use of deadly force to end a high-speed chase. *Id.* at 374. In that case, an officer attempted to initiate a traffic stop because the plaintiff was driving 73 miles per hour on a road with a 55 mile per hour speed limit. *Id.* A chase ensued when the plaintiff refused to stop. *Id.* at 374-75. During the chase, the plaintiff traveled up to 85 miles per hour, swerved around at least

5

twelve cars, crossed double lines, ran red lights, and forced bystander cars to the shoulder. *Id.* at 374, 379. Six minutes and ten miles into the chase, the defendant officer received permission from his supervisor to perform a PIT maneuver to end the chase. *Id.* at 375. Instead, the defendant officer pushed the plaintiff's rear bumper with the front bumper of his squad car, causing plaintiff's vehicle to overturn and rendering plaintiff a quadriplegic. *Id.* The court held the use of deadly force reasonable. *Id.* at 386. The court rejected the plaintiff's argument that the officers could have protected the public by ending the pursuit, noting:

> Whereas [defendant officer's] action—ramming [plaintiff] off the road—was *certain* to eliminate the risk that [plaintiff] posed to the public, ceasing pursuit was not. First of all, there would have been no way to convey convincingly to [plaintiff] that the chase was off, and that he was free to go. Had [plaintiff] looked in his rearview mirror and seen the police cars deactivate their flashing lights and turn around, he would have had no idea whether they were truly letting him get away, or simply devising a new strategy for capture. Perhaps the police knew a shortcut he didn't know, and would reappear down the road to intercept him; or perhaps they were setting up a roadblock in his path. Given such uncertainty, [plaintiff] might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow.
> Second, we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness. Instead, we lay down a more sensible rule: A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.

*Id.* at 385-86 (citations and footnote omitted).

Here, it is undisputed that Officer Eral suspected Christiansen of driving while intoxicated, and during the pursuit, both he and another officer witnessed Christiansen driving at high speeds (more than 80 miles per hour), running stop signs, and traveling

6

on the wrong side of the road. Christiansen does not allege that the roads were empty of vehicles, and the complaint affirmatively notes at least one bystander vehicle impacted by the chase (a vehicle stopped by stop sticks instead of Christiansen and that Christiansen swerved to avoid). Although the complaint does not state how long the chase lasted before Officer Eral employed the PIT maneuver, Christiansen had been pursued long enough that officers had tried (and failed) to use stop sticks to end the chase.[2] Under the circumstances, the facts alleged in the complaint establish it was reasonable for Officer Eral to perform the PIT maneuver to stop Christiansen. *See Sharp v. Fisher*, 532 F.3d 1180, 1181, 1184 (11th Cir. 2008) (per curiam) (holding that PIT maneuver did not violate plaintiff's Fourth Amendment rights when chase ensued for twenty miles, crossing state lines, after plaintiff refused to stop when officer attempted to pull plaintiff over for speeding, and during the chase, plaintiff had been driving erratically and at a high speed and several other civilian vehicles were on the highway during the pursuit) (favorably cited by the Eighth Circuit in *Moore-Jones v. Quick*, 909 F.3d 983, 986 (8th Cir. 2018)); ***Pasco ex rel. Pasco v. Knoblauch***, 566 F.3d 572, 574, 581 (5th Cir. 2009) (holding that use of deadly force to end chase was reasonable, even though no other vehicles or pedestrians were encountered during the pursuit, when defendant had seen plaintiff driving erratically and suspected plaintiff of driving while intoxicated, and plaintiff fled at speeds of 90 miles per hour when defendant attempted to initiate the stop) (favorably cited by the Eighth Circuit in *Moore-Jones*); ***Cheeks v. Belmar***, No. 4:18-cv-2091-SEP,

---

[2] The complaint alleges the chase began at the VIP Gaming Lounge Casino and ended on 5th Street, meaning the chase lasted at least 2.6 miles (the minimum distance between the casino and 5th Street, according to Google Maps). *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (district court may take judicial notice when ruling on a motion to dismiss); *Glob. Control Sys., Inc. v. Luebbert*, No. 4:14-CV-657-DGK, 2015 WL 753124, at *1 n.2 (W.D. Mo. Feb. 23, 2015) (taking judicial notice of online distance calculations provided by Google Maps). The chase likely lasted longer than 2.6 miles—if the PIT maneuver were performed on a portion of 5th Street further away from the casino or if Christiansen did not take the most direct route to 5th Street. I further note that the fact that the chase crossed state lines does not bear on its lengthiness in this case, as the VIP Gaming Lounge Casino is located very near South Dakota's border with Iowa (less than .3 miles).

7

2020 WL 5569982, at *1, *14-17 (E.D. Mo. Sept. 17, 2020) (granting motion to dismiss § 1983 excessive force claim when complaint alleged plaintiff engaged in high-speed chase after refusing to stop for running a red light, pursuit reached speeds in excess of 90 miles per hour in residential area with speed limit between 35 to 40 miles per hour, and defendant performed PIT maneuver to end chase, causing plaintiff to crash into tree).

Christiansen suggests that he did not pose a risk of immediate harm because at the precise time the PIT maneuver was employed, no other vehicles or bystanders were nearby. But as the Fifth Circuit noted in *Pasco*:

> At the moment the officer in *Scott* rammed the suspect's vehicle, it was not threatening any other vehicles or pedestrians. *See Scott,* [550 U.S. at 380 n.7]. In spite of this fact, the Court concluded that the suspect "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." *Id.* at 384. This indicates that the holding of *Scott* was not dependent on the actual existence of bystanders—rather, the Court was also concerned about the safety of those who could have been harmed if the chase continued.

566 F.3d at 580-81 (bold emphasis added).

The cases relied upon by Plaintiff are both distinguishable. Both involved high-speed chases in which the officer shot at the plaintiff *after* the plaintiff had already come to a stop (and one of the cases involved a much shorter pursuit than here). *See **Lytle v. Bexar Cnty., Tex.**,* 560 F.3d 404, 407-08, 413, 416-17 (5th Cir. 2009) (denying qualified immunity when chase ensued for only a quarter to a half mile before the plaintiff collided with another vehicle and came to a stop, and a jury could find the officer shot at the rear of plaintiff's vehicle, killing plaintiff's passenger, after "the justification for the use of force ha[d] ceased"); ***McCaslin v. Wilkins***, 183 F.3d 775, 777, 779 (8th Cir. 1999) (denying qualified immunity when officer shot at plaintiff's car after high-speed chase had come to an end due to plaintiff crashing into a ditch; the court noted viewing the facts in the light most favorably to plaintiff, the officers began shooting at the car almost immediately after it left the road, so there was an issue whether the use of force was

necessary to prevent plaintiff's escape). Thus, in *Lytle* and *McCaslin*, there was an issue whether force was necessary to end the high-speed chase, because a jury could find the chase had already ended. In addition, as the Supreme Court noted in *Scott*, "[a] police car's bumping a fleeing car is . . . not much like a policeman's shooting a gun so as to hit a person." *Scott*, 550 U.S. at 383 (quoting ***Adams v. St. Lucie Cnty. Sheriff's Dep't***, 962 F.2d 1563, 1577 (11th Cir. 1992) (Edmondson, J., dissenting)). Although both may amount to deadly force, the "nature and quality" of shooting someone versus using a PIT maneuver weigh differently in the Fourth Amendment balancing test.

According to the complaint, Christiansen was driving recklessly at high speeds and believed to be intoxicated. The pursuit impacted at least one bystander vehicle (and perhaps more). Officers attempted to end the chase using speed sticks but were unsuccessful. Under these circumstances, it was not unreasonable for Officer Eral to use the PIT maneuver to end the chase. The complaint does not set forth facts sufficient to establish a violation of Christiansen's Fourth Amendment rights.[3]

Accordingly, Christiansen's excessive force claim is dismissed.

### B. Section 1983 Substantive Due Process Claim[4]

"[T]he substantive component of the Due Process Clause protects a private citizen against an abuse of power by an executive official that 'shocks the conscience.'" ***Helseth v. Burch***, 258 F.3d 867, 870 (8th Cir. 2001) (en banc). The officer's conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." ***Id.*** (quoting ***Cnty. of Sacramento v. Lewis***, 523 U.S. 833, 848 n.8 & 849 (1998)). To state a substantive due process claim based on a high-speed chase, "only a

---

[3] Even if I were to find Christiansen stated a claim for a violation of his Fourth Amendment rights, I would not find this right clearly established based on the foregoing caselaw. Plaintiff argues that the doctrine of qualified immunity should be overturned, but I am bound by Eighth Circuit and Supreme Court precedent.

[4] Plaintiff suggests that Defendant does not move to dismiss the substantive due process claim, but I disagree. *See* Doc. 7-1 at 5-6, 8.

purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* (quoting *Lewis*, 523 U.S. at 836). In other words, the officer must have applied force "maliciously and sadistically for the very purpose of causing harm." *Neal v. St. Louis Cnty. Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000) (quoting *Lewis*, 523 U.S. at 853).

Here, the amended complaint alleges that Officer Eral collided with Christiansen's truck "with an intent to harm [Christiansen] unrelated to effectuating [Christiansen's] arrest." Doc. 12 ¶ 70. But this legal conclusion is not entitled to any weight under the *Twombley*/*Iqbal* plausibility standard. *See Brown v. City of St. Louis, Mo.*, No. 4:18 CV 1676 (JMB), 2019 WL 3577491, at *8 (E.D. Mo. Aug. 6, 2019) (noting allegation that officer acted with "the intent to harm plaintiff" was a conclusion "which serve[d] as part of the framework for the claim but which the [c]ourt does not accept as true" (quoting *Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 (CAS), 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019))). The complaint contains no factual allegations suggesting that Officer Eral acted with any purpose other than ending the chase. Plaintiff argues that because Officer Eral performed the PIT maneuver while Christiansen was driving at high speeds and in the vicinity of a light pole, in violation of departmental policy, Officer Eral knew the force he employed might result in death and thus, he intended to harm Christiansen. Plaintiff's allegations establish Officer Eral knew of the risks to Christiansen in performing the PIT maneuver; they do not establish that he acted maliciously and sadistically to harm Christiansen for a reason other than ending the chase.

Accordingly, the substantive due process claim is dismissed.

### C. *Monell* Liability

Claims based on a violation of official municipal policy cannot "be sustained absent an underlying constitutional violation by the officer." *Malone v. Hinman*, 847

10

Case 5:21-cv-04017-KEM   Document 27   Filed 11/19/21   Page 10 of 12

F.3d 949, 956 (8th Cir. 2017) (quoting *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 470 (8th Cir. 2010)). When a court "conclude[s] that [the individual officer] did not violate [the plaintiff's] constitutional rights, there can be no § 1983 or *Monell* liability on the part of" officers in their official capacity or the city. *Id.* at 955. Accordingly, Christiansen's *Monell* liability claim is dismissed.

### D. State-Law Claims

Defendants move to dismiss Plaintiff's claims under the Iowa Constitution, arguing that there is no reason to believe Iowa courts interpret the Iowa Constitution differently than the federal Constitution. Plaintiff disagrees, citing cases in which Iowa courts have generally held that the "Iowa Constitution affords individuals greater rights than does the United States Constitution." *Shmidt v. State*, 909 N.W.2d 778, 793 (Iowa 2018). Defendants also move to dismiss the claims for negligent training and supervision and respondeat superior based on their argument that the underlying claims should be dismissed. As Plaintiff notes, Defendants fail to acknowledge in their opening brief that Plaintiff alleged a negligence claim under state law against Officer Eral. In reply, Defendants argue that qualified immunity should bar the state-law negligence claim since it is simply a "restatement[] of his constitutional claims." Defendants cite no caselaw for this proposition.

"Upon a determination that plaintiffs' federal claims fail to state a claim, the Court has discretion to dismiss without prejudice plaintiffs' attendant state law claims." *Adams v. Eureka Fire Prot. Dist.*, No. 4:08CV1309 CDP, 2009 WL 73679, at *2 (E.D. Mo. Jan. 8, 2009) (citing *Miner v. Local 373,* 513 F.3d 854, 866 (8th Cir. 2008)), *aff'd as modified,* 352 F. App'x 137 (8th Cir. 2009). Here, because Defendants' briefing focuses on the federal claims, the court declines to exercise jurisdiction over the state-law claims. Without weighing on the merits, the court dismisses the state-law claims without prejudice.

11

### *III.  CONCLUSION*

Defendants' motions to dismiss (Docs. 7, 15) are **granted**.  Counts one through three are dismissed with prejudice, and counts four through seven are dismissed without prejudice.  The clerk of court is directed to enter judgment accordingly.

**IT IS SO ORDERED** this 19th day of November, 2021.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa